UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KULBERG FINANCES INC.,

                    Plaintiff,

        -against-

SPARK TRADING D.M.C.C., CAIRO THREE
A FOR TRADING, CAIRO THREE A FOR
TRADING S.A.E., and CAIRO THREE A
IMPORT & EXPORT S.A.E.,

                    Defendants.

09 Civ. 00792 (RWS)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER FED. R. CIV. P. RULE B OF THE SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS __**

**BLANK ROME LLP**
**ATTORNEYS FOR DEFENDANTS**
**THE CHRYSLER BUILDING**
**405 LEXINGTON AVENUE**
**NEW YORK, NY 10174**
**(212) 885-5000**

131643.00602/6723003v.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................iii

INTRODUCTION ............................................................................................. 1

THE BASIC FACTS ......................................................................................... 2

    A.    THE SALES CONTRACT ................................................................ 2

    B.    THE NATURE OF THE DISPUTES UNDER THE SALES
        CONTRACT ................................................................................ 2

ARGUMENT.................................................................................................... 3

POINT I ......................................................................................................... 3

PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS
SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO
VACATE THE ATTACHMENTS ........................................................................ 3

    A.    STANDARD FOR THE RULE E CHALLENGE................................. 3

    B.    THE STANDARD UNDER FED.R.CIV.P. RULE 12(b)(1) ...................... 4

POINT II........................................................................................................ 5

NEITHER THE SALES CONTRACT NOR THE GAFTA CLAIMS UNDER IT GIVE
RISE TO ADMIRALTY JURISDICTION .......................................................... 5

    A.    THE APPLICABLE STANDARD FOR DETERMINING
        WHETHER A CLAIM IS MARITIME........................................... 5

    B.    THE TEST AS STATED IN THE SECOND CIRCUIT ............................ 6

        1.  Does A Threshold Inquiry Exist?................................................. 6

        2.  The Second Circuit's Threshold, Perhaps................................... 7

    C.    THE SALES CONTRACT IS NOT A MARITIME CONTRACT
        UNDER APPLICABLE SUBSTANTIVE LAW ........................................ 7

        1.  Applicable Substantive Law Determines Whether The Contract And
            Dispute At Issue Is Maritime .................................................... 7

# TABLE OF CONTENTS

(continued)

Page

D.    THE COMPLAINT DOES NOT PASS THE THRESHOLD
INQUIRY UNDER ENGLISH LAW ......................................................... 11

POINT III ........................................................................................................... 12

THE SALES CONTRACT DOES NOT FIT WITHIN EITHER OF THE TWO
EXCEPTIONS ...................................................................................................... 12

A.    THE "PRINCIPAL OR PRIMARY OBJECTIVE" OF THE SALES
CONTRACT WAS THE SALE AND PURCHASE OF
UKRANIAN BARLEY ............................................................................ 12

POINT IV ........................................................................................................... 14

THE SEVERABILITY EXCEPTION IS INAPPLICABLE ........................................... 14

CONCLUSION ..................................................................................................... 20

131643.00602/6723003v.1

# TABLE OF AUTHORITIES

Page

CASES

Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd.,
     460 F.3d 434 (2d Cir. 2006).......................................................................... 3, 8

Aston Agro-Industrial AG v. Star Grain Ltd.,
     No. 06 CV 2805, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006)......... 16, 17

Beluga Chartering GmBh v. Korea Logistics Systems Inc.,
     589 F. Supp. 2d 325 (S.D.N.Y. 2008)........................................................... 10

Bottiglieri di Navigazione SPA v. Tradeline LLC,
     472 F. Supp.2d 588 (S.D.N.Y. 2007)............................................................. 9

C. Transport Panamax, Ltd. V. Kremikotzi Trade E.O.O.D, et al.,
     No. 07 Civ. 893, 2008 U.S. Dist Lexis 48688 (S.D.N.Y. Jun. 19, 2008)...................... 5

Castelan v. M/V MERCANTIL PARATI,
     No. 91-1351, 1991 U.S. Dist. LEXIS 6472 (D.N.J. May 8, 1991)............................. 10

EFKO Food Ingredients Ltd. v. Pacific Inter-Link SDN BHD,
     582 F. Supp. 2d 466 (S.D.N.Y. 2008)............................................................ 15

Engenharia Ltda v. Ocean Rig IA,
     78 F. Supp. 2d 162 (S.D.N.Y. 1999).............................................................. 4

Exim Grain Trade, B.V. v. J.K. International Pty Ltd.,
     No. 08 Civ. 6989, 2008 U.S. Dist. LEXIS 99807 (S.D.N.Y. Dec. 2, 2008)........ 4, 7, 15

Exxon Corp. V. Central Gulf Lines, Inc.,
     500 U.S. 603, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991)............................................. 5

F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD,
     591 F. Supp. 2d 377 ...................................................................... 6, 7, 12, 13

Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.,
     413 F.3d 307 (2d Cir. 2005)........................................................... 6, 7, 14, 15

French Republic v. Fahey,
     278 F. 947 (D. Md. 1922) ........................................................................... 14

131643.00602/6723003v.1

### TABLE OF AUTHORITIES
(continued)

Ice Flake Maritime Ltd. v. Westcoast AS et al.,
   No. 07 Civ. 2002, 2007 U.S. Dist. LEXIS 75677 (S.D.N.Y. Oct. 11, 2007) ............... 9

Kulberg Finances Inc. v. Ipek Yem Ve Gida Sanayi Ticaret A.S.,
   No. 08-cv-10592 (S.D.N.Y. Apr. 22, 2009) ................................................. 18

Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy International, Ltd.,
   958 F.2d 58 (5th Cir. 1992) .................................................................. 13, 14

Metron Communications, Inc. v. M/V Tropicana,
   No. 89-2460-CIV, 1992 U.S. Dist. LEXIS 22613 (S.D.Fla. Mar. 6, 1992) ............... 10

Nais Marine S.A. v. Trans Pacific Carriers Co. Ltd.,
   No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008).............. 11

Noble Resources v. Yugtranzitservis et al.,
   No. 08 Civ. 3876 (S.D.N.Y. Jul. 23, 2008)........................................... 18, 19

Norfolk Southern Railway Co. v. Kirby,
   543 U.S. 14, 125 S. Ct. 3385, 160 L. Ed. 2d 283 (2004)........................................... 6, 7

OGI Oceangate Transp. Co. Ltd. v. BP Logistics PVT Ltd.,
   No. 06 Civ. 9441, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. Jun. 26, 2007) ............. 10

Padre Shipping Inc. v. Yong He Shipping et al.,
   553 F. Supp.2d 328 (S.D.N.Y. 2008)..................................................... 10

Penguin Maritime Ltd. v. Lee & Muirhead Ltd.,
   588 F. Supp. 2d 522 (S.D.N.Y. 2008)........................................................ 10

Precious Pearls Ltd. v. Tiger International Line Pte Ltd., et al.,
   No. 07 Civ. 8325, 2008 U.S. Dist. LEXIS 58453 (S.D.N.Y. Jul. 31, 2008) ................ 9

Salazar v. THE ATLANTIC SUN,
   881 F.2d 73 (3d Cir. 1989).................................................................. 3

Seaplus Line Co. v. Bulkhandling Handymax,
   409 F. Supp.2d 316 (S.D.N.Y. 2005)....................................................... 3

Shanghai Sinom Import & Export v. Exfin (India),
   No. 06 Civ. 4711, 2006 U.S. Dist. LEXIS 97863 (S.D.N.Y. Oct. 6, 2006) ............... 17

Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.,
   478 F. Supp.2d 532 (S.D.N.Y. 2007)..................................................... 8, 9

## TABLE OF AUTHORITIES

(continued)

Page

Stolthaven Houston, Inc. v. RACHEL B, et al.,
    No. 08 Civ. 4327, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. Jul. 17, 2008) .............. 10

T&O Shipping Ltd. v. Lydia Mar Shipping Co.,
    455 F. Supp.2d 310 (S.D.N.Y. 2006)............................................................................ 9

Tangshan Shiajichenhui Iron & Steel v. Lords Polymer P VT Ltd., et al.,
    No. 08-Civ-3576 (S.D.N.Y. May 20, 2008) ................................................................ 18

Williamson, et al., v. Recovery Limited Partnership,
    542 F.3d 43 (2d Cir. 2008)....................................................................................... 5, 6

Winter Storm Shipping Ltd. v. TPI,
    310 F.3d 263 (2d Cir. 2002)..................................................................................... 4, 8

**STATUTES**

28 U.S.C. § 1333 ................................................................................................................ 4, 8

Fed. R. Civ. P. Rule 12(b)(1).............................................................................................. 1, 4

Fed. R. Civ. P. Rule E(4)(f) ............................................................................................... 1, 3

131643.00602/6723003v.1

# INTRODUCTION

Defendant SPARK TRADING D.M.C.C. ("Spark") respectfully submits this memorandum of law in support of its emergency motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12(b)(1) to dismiss the complaint and to vacate an order of maritime attachment and garnishment dated January 29, 2009 ("PMAG") under Supplemental Rule B of the Supplemental Rules of F. R. Civ. P. For Certain Admiralty And Maritime Claims ("Supplemental Rules") obtained by Plaintiff KULBERG FINANCES INC. ("Kulberg") which it seeks to attach $ 337,924.50.[1]

Kulberg's claim is based on a non-maritime sales contract to sell Ukrainian barley based on the standard Grain and Feed Trade Association ("GAFTA') Form 48, not a charter party or, as alleged, a contract of affreightment ("COA") to transport it. Spark respectfully submits that the Court lacks admiralty jurisdiction, as explained below. Spark has not moved, and is not required to do so, by order to show cause for an expedited hearing to free its assets. Local Rule E.1, implementing Supplemental Rule E(4)(f)'s "prompt hearing" requirement, specifically provides for a hearing "within three (3) court days, unless otherwise ordered." Spark respectfully requests such an expedited hearing.

---

[1]    The sum attached, to date, is $337,924.

## THE BASIC FACTS

### A. THE SALES CONTRACT

Spark, defined as "Buyer," entered into contract no. 532.080830 dated August 30,2008 with Kulberg, defined as "Seller" (the "Sales Contract"). (Compl. Ex. 1 attached as part of Ex. 1 to the Declaration of Robert Andrew Jardine-Brown dated May 26, 2008 ("Jardine-Brown Decl.").) The Sales Contract was for the sale and purchase of 7,000 m.t. of "Ukrainian origin feed barley crop 2008 at a price of $302 p.m.t. "CIFFO" (Cost, Insurance and Freight, Free Out). The Sales Contract provided:

> Conditions: All other terms, rules and conditions, not conflicting with the contents of this contract are as per GAFTA No. 100. Arbitration, in London, as per GAFTA No. 125.

(Id.)

### B. THE NATURE OF THE DISPUTES UNDER THE SALES CONTRACT

In compliance with their obligations under the Sales Contract, Kulberg shipped 6,876.802 metric tons of barley to Tartous, Syria on board the M/V SUNRISE (the "vessel"). Under the Sales Contract, Spark was responsible for the timely discharge of the vessel. (Compl. ¶10.) Plaintiff alleges that Spark exceeded the contractual time for discharge by 31 days, 18 hours and 55 minutes thereby incurring a demurrage charge of $232,452.56, for which Spark is liable. (Compl. ¶¶12 - 13.)

131643.00602/6723003v.1

## ARGUMENT

### POINT I

### PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO VACATE THE ATTACHMENTS

**A.**     **STANDARD FOR THE RULE E CHALLENGE**

An order of maritime attachment and garnishment pursuant to Rule B is typically issued upon a prima facie showing, usually made ex parte. See, e.g., Seaplus Line Co. v. Bulkhandling Handymax, 409 F. Supp.2d 316 (S.D.N.Y. 2005). Once property has been restrained:

> Any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Rule E(4)(f) (emphasis supplied).

The Second Circuit has found that Rule E(4)(f) is clear and the burden is on the plaintiff to show the attachment "was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).[2] Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends entirely upon the issues in controversy. Salazar v. THE ATLANTIC SUN, 881 F.2d 73, 79 (3d Cir. 1989).

---

[2]     To the extent the attachment is to be vacated on an equitable ground, however, the burden is on the defendant to establish any equitable grounds for vacatur. Id

-3-

Nevertheless, "[t]he absence of maritime jurisdiction would prove fatal to plaintiff's attachment." Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA, 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999). See also Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) (which held that in order to support the issuance of a maritime attachment, "the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333") (citation omitted).

Accordingly, the burden is now on Plaintiff to establish the Court's admiralty jurisdiction to sustain the PMAG under U.S. general maritime law, which reviews the substantive law applicable to the disputes at issue, as discussed below.

**B.    THE STANDARD UNDER FED. R. CIV. P. RULE 12(b)(1)**

Judge Pauley, in Exim Grain Trade, B.V. v. J.K. International Pty Ltd., No. 08 Civ. 6989, 2008 U.S. Dist. LEXIS 99807 (S.D.N.Y. Dec. 2, 2008) stated the standard as follows:

> In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a court must accept as true all material factual allegations in the complaint." Shippling Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). It is the plaintiff's responsibility to establish subject matter jurisdiction. Markarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Id. at *3.

## POINT II

## NEITHER THE SALES CONTRACT NOR THE GAFTA CLAIMS UNDER IT GIVE RISE TO ADMIRALTY JURISDICTION

**A.      THE APPLICABLE STANDARD FOR DETERMINING WHETHER A CLAIM IS MARITIME**

As recently stated in Williamson, et al., v. Recovery Limited Partnership, 542 F.3d 43, 48 (2d Cir. 2008):

> . . . because pre-judgment attachment is such a severe remedy, it is important to first determine whether a contract is, in fact, a maritime contract warranting maritime attachment.

Accordingly, the Court must look at the "principal objective" of the Sales Contract, which is the sale of wheat.

As summarized by Judge Preska in C. Transport Panamax, Ltd. V. Kremikotzi Trade E.O.O.D, et al., No. 07 Civ. 893, 2008 U.S. Dist Lexis 48688, at *5 (S.D.N.Y. Jun. 19, 2008):

> To determine whether a claim sounds in maritime, "courts should look to the subject matter of the [relevant] contract and determine whether the services performed under the contract are maritime in nature." Exxon Corp. V. Central Gulf Lines, Inc., 500 U.S. 603, 612, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991). This inquiry "depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 24, 125 S. Ct. 3385, 160 L. Ed. 2d 283 (2004) (quotation marks omitted).

As recalled in Exxon, 500 U.S. at 608, "[t]he fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" (Quoting Sisson v.

Ruby, 497 U.S. 358, 367, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990) quoting Foremost

Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982)).

**B.      THE TEST AS STATED IN THE SECOND CIRCUIT**

In F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD,

591 F. Supp. 2d 377, 381 - 84 (S.D.N.Y. 2008), Judge Scheindlin carefully examined the

law applicable to a motion to vacate for lack of maritime jurisdiction based on the law in

this Circuit but without reference to the applicable substantive law.

**1.      Does A Threshold Inquiry Exist?**

The Supreme Court in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004)

stated the test for maritime contracts/admiralty jurisdiction without any discussion of a

"threshold inquiry." As Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413

F.3d 307, 314 (2d Cir. 2005), acknowledged, "the absence of any discussion by the

Supreme Court of a 'threshold inquiry' akin to that found in our precedents is notable."

Nevertheless, that decision stated "[w]e simply highlight this discrepancy and leave for a

more appropriate case the question of how [Norfolk] might circumscribe our 'threshold

inquiry' doctrine, if at all."  Id.

The fact that Judge Pooler in Williamson, who also was on the panel of

Folksamerica, did not mention the "threshold inquiry" in determining the maritime

"nature and character" of the contracts at issue there suggests that the inquiry does not

precede nor is it a part of the Supreme Court's test based on the "primary" or "principal"

objective" of the parties' agreement.

2.      **The Second Circuit's Threshold, Perhaps.**

Citing <u>Folksamerica</u>, at 312, Judge Scheindlin set out in <u>F.H. Bertling</u> the Second

Circuit's threshold inquiry, based on the assumption that it survived the Supreme Court's

decision in <u>Kirby</u>, <u>supra</u>, as follows:

> The threshold inquiry examines <u>the subject matter of a</u>
> <u>dispute</u>, as opposed to the underlying contract, to determine if
> "an issue related to maritime interests has been raised."  A
> dispute will not give rise to maritime jurisdiction if "the
> subject matter of the dispute is so attenuated from the
> business of maritime commerce that it does not implicate the
> concerns underlying admiralty and maritime jurisdiction."

<u>F.H. Bertling</u> at 382 [citations omitted].  In applying the law to the logistics agreement at

issue, the Court held that "the nature of the dispute is sufficiently connected to maritime

commerce to pass the threshold" set by <u>Folksamerica</u>.  <u>Id</u>. at 384.

Judge Pauley also accepted that the "threshold test" applied in <u>Exim</u>, 2008 U.S.

Dist. LEXIS 99807, and was passed because "this dispute involves the ocean shipment of

grain…".  <u>Id</u>.  However, neither decision reviewed the applicable substantive law – if no

admiralty jurisdiction arises under that law either in respect of the contract or disputes

under it (<u>see</u>, <u>e.g.</u>, Jardine-Brown Decl. ¶13) applying the threshold test is an artificial

inquiry.

C.      **THE SALES CONTRACT IS NOT A MARITIME CONTRACT**
        **UNDER APPLICABLE SUBSTANTIVE LAW**

1.      **Applicable Substantive Law Determines Whether The Contract**
        **And Dispute At Issue Is Maritime**

The Sales Contract is subject to English law and GAFTA arbitration in London.

(Jardine-Brown Decl. ¶8.)  (Under the applicable substantive law, neither of the GAFTA

Claims are maritime or admiralty claims under applicable substantive law so that the "threshold inquiry," if valid, cannot be passed to give rise to this Court's admiralty jurisdiction, lack of which is "fatal to plaintiff's attachment." Maritime Petroleo, supra.

As stated in Bertling Holding V.G. v. Ronhill Engineers & Constructors SDN. BHD., supra, at 381 - 82, "[f]ederal courts may exercise their maritime jurisdiction granted by section 1333 of title 28 of the United States Code if an action is based on a maritime contract." (citing Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23, 125 S.Ct. 385, 160 L.Ed. 2d 284 (2004) (a federal action can "be sustained under the admiralty jurisdiction by virtue of the maritime contracts involved")).

District Judge Haight, who was the author of the Second Circuit's Winter Storm decision, 330 F.3d 263 (2d Cir. 2002), considered in Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp.2d 532, 536 (S.D.N.Y. 2007), Sun United's motion to vacate a Rule B attachment on the basis that Sonito had failed to satisfy the requirement, stated in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006), of pleading a "valid prima facie admiralty claim against the defendant." Judge Haight held:

> The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, in this case the law of contract. And that leads to a consideration of English law because, as noted *supra*, the parties agreed in the charter party that it "shall be governed by and construed in accordance with English law."

Id at 536-37. [footnote omitted, emphasis added]. Judge Haight also observed, in a footnote: "a presently existing valid maritime claim under substantive English law is a

131643.00602/6723003v.1

prerequisite for Sonito's action in personam with writ of attachment under Rule B."  478 F.Supp. 2d at 537, n. 2 [emphasis added].

After reviewing various decisions in which the prematurity of an indemnity claim had led to vacatur of the attachment because the claim was "not ripe under English law"[3] or because that issue "will be decided under English law in the arbitration"[4] Judge Haight considered the "core question" which was "governed by English Law" and held that Sonito had not "carried its burden of showing at the time of the attachment it had a valid maritime claim …." Id. at 543.

Thus, "courts which find that foreign law applies in a maritime action must apply that law to determine if a valid maritime lien exists and an in rem proceeding may thereby continue."  Garcia v. M/V Kubbar, 4 F. Supp. 2d 99, 103 (N.D.N.Y 1998).

In Ice Flake Maritime Ltd. v. Westcoast AS et al., No. 07 Civ. 2002, 2007 U.S. Dist. LEXIS 75677, at *1 (S.D.N.Y. Oct. 11, 2007), a defendant moved to vacate the Rule B attachment on the basis that the plaintiff did not have a valid admiralty claim for economic losses under U.S. law.  Judge Castel held that, "without prejudging the choice of law analysis," the "Plaintiff has made a plausible claim that Norwegian law will apply and economic losses are recoverable under that jurisdiction's law if there is negligence …".  The attachment was upheld because "I comfortably conclude that the plaintiff has asserted a valid prima facie admiralty claim."  Accord Precious Pearls Ltd. v. Tiger International Line Pte Ltd., et al., No. 07 Civ. 8325, 2008 U.S. Dist. LEXIS 58453

---

[3]    Bottiglieri di Navigazione SPA v. Tradeline LLC, 472 F. Supp.2d 588 (S.D.N.Y. 2007).

[4]    T&O Shipping Ltd. v. Lydia Mar Shipping Co., 455 F. Supp.2d 310, 316 (S.D.N.Y. 2006).

(S.D.N.Y. Jul. 31, 2008) (failure to state a valid maritime claim under English law).  <u>See also</u> <u>Penguin Maritime Ltd. v. Lee & Muirhead Ltd.</u>, 588 F. Supp. 2d 522 (S.D.N.Y. 2008) (plaintiff established a prima facie valid maritime claim under Indian law for breach of maritime contract and maritime tort); <u>Beluga Chartering GmBh v. Korea Logistics Systems Inc.</u>, 589 F. Supp. 2d 325 (S.D.N.Y. 2008) (defendant failed "to demonstrate any legal infirmity in Beluga's claim under either English or federal admiralty law."); <u>Stolthaven Houston, Inc. v. RACHEL B, et al.</u>, No. 08 Civ. 4327, 2008 U.S. Dist. LEXIS 55723 (S.D.N.Y. Jul. 17, 2008) (applying Norwegian and U.S. law to determine existence of a bare boat charter that deprived plaintiff of a valid maritime claim); <u>OGI Oceangate Transp. Co. Ltd. v. BP Logistics PVT Ltd.</u>, No. 06 Civ. 9441, 2007 U.S. Dist. LEXIS 46841, at *4 (S.D.N.Y. Jun. 26, 2007) ("[w]ithout an understanding of the applicable law, the Court is unable to determine whether [plaintiff] has made a prima facie claim."); <u>Padre Shipping Inc. v. Yong He Shipping et al.</u>, 553 F. Supp.2d 328, 333-34 (S.D.N.Y. 2008) (Plaintiff "has made a sufficient showing that Chinese law will govern and that the complaint states a valid maritime claim under that law."  [<u>citing</u> <u>Ice Flake</u> and <u>Carbotrade</u>]); <u>Metron Communications, Inc. v. M/V Tropicana</u>,  No. 89-2460-CIV, 1992 U.S. Dist. LEXIS 22613, at *4, (S.D.Fla. Mar. 6, 1992) (disposition of in rem claim depended on whether Greek or American law applied to determine whether maritime lien existed); <u>Castelan v. M/V MERCANTIL PARATI</u>, No. 91-1351, 1991 U.S. Dist. LEXIS 6472, at *4, (D.N.J. May 8, 1991) (plaintiff had no maritime lien under English law, and therefore no right to proceed in rem).

-10-

In <u>Nais Marine S.A. v. Trans Pacific Carriers Co. Ltd.</u>, No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008), Nais' Rule B action was for $250,000 for estimated costs it expected to be awarded in defending a claim in London arbitration, for which it had provided security, including for "costs" in the same amount, in an earlier Rule B action by Trans Pacific, which had been dismissed upon the posting of security. Trans Pacific moved to vacate the attachment "on the ground that this Court has no subject matter jurisdiction over Nais's claim for costs and fees." <u>Id</u>. at * 5. <u>Trans Pacific</u> argued that the "court lacks subject matter jurisdiction because Nais's claim is for legal defense costs and not a maritime claim" under English law. <u>Id</u>. at *7. Judge Leisure ruled that under neither English nor American law would Nais' "costs" claim be a "maritime claim" so that it "failed to meet its burden of showing that maritime or admiralty jurisdiction exists" so that the motion to dismiss for lack of subject matter jurisdiction was granted.

**D.    THE COMPLAINT DOES NOT PASS THE THRESHOLD INQUIRY UNDER ENGLISH LAW**

Despite artful pleading alleging that the Sales Contract is a "Contract of Affreightment" to give the Complaint a "salty" flavor, the "subject matter of the dispute" is not maritime under applicable substantive law. It cannot be disputed that the GAFTA Claims, under English law, are claims "in respect of which the admiralty jurisdiction of the English High Courts could be invoked" and "neither GAFTA [C]laim can properly be termed Maritime claims" under English law. (Jardine-Brown Decl. ¶ 13.) The Court therefore lacks jurisdiction.

**POINT III**

**THE SALES CONTRACT DOES NOT FIT WITHIN EITHER OF THE TWO EXCEPTIONS**

A. **THE "PRINCIPAL OR PRIMARY OBJECTIVE" OF THE SALES CONTRACT WAS THE SALE AND PURCHASE OF UKRAINIAN BARLEY**

As stated in F.H. Bertling, 591 F. Supp. 2d 377, supra:

> Traditionally, only "contracts, claims, and services *purely* maritime" were covered by federal maritime jurisdiction. Two exceptions to this rule allow maritime jurisdiction over contracts that combine both maritime and non-maritime elements: *first*, if the maritime elements of a contract are the principal or primary objective of the contract, and second, if "the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract."

Id. at 383.

Next the Court held that because the Agreement "contemplates land-based obligations as well as ocean-based ones, it is not a purely maritime contract" so that maritime jurisdiction would only lie "under the principal purpose or severability exception." Id. at 384. Although the Agreement mentioned ocean shipping ("door to door freight forwarding") the Agreement did not name, inter alia, ports of origin or destination, shipping dates or rates and specifically reserved the buyer's shipping rights so that Bertling, the Rule B plaintiff, "might not be in a position to arrange or charge for any shipping, oceanic or otherwise." Id. at 385. The Court concluded:

> Because the Agreement specifically contemplates a situation in which Bertling is not involved in ocean shipping in any way, it does not have maritime commerce as its principal purpose. . . . Its principal purpose is not maritime commerce,

-12-

but rather logistical support for the specified construction projects.

The Logistics Agreement does not fit within the severability exception because <u>it creates no maritime obligations that might be severed from other land-based obligations</u>. Further, because the Agreement lists no allotments or percentages of ocean shipping that Bertling is bound to perform, nor any separate shipping rates or charges, any maritime obligations that the Agreement may have created cannot be clearly separated from the land-based obligations.

<u>Id</u>. (emphasis added)

Here, the Sales Contract's primary objective was the sale of goods and not their transportation by sea. The notion that a sales contract becomes "maritime" simply because there is a sale of goods that are to be transported by sea has been consistently rejected, even when governed by U.S. law.

In <u>Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy International, Ltd.</u>, 958 F.2d 58, 59 (5th Cir. 1992) the Court stated that it was "beyond cavil" that "a principal purpose of the contract was the land-based sale of over a thousand metric tons of toluene." It continued:

"[i]t is well-established that such a sale of goods by itself would not be "maritime" merely because the seller agrees to ship the goods by sea to the buyer.); <u>Armour & Co. v. Fort Morgan Steamship Co.</u>, 270 U.S. 253, 259, 1926 AMC 327, 331 (1926) ("The original contract to purchase, assemble, and sell the cattle, to charter vessels and therein transport the cattle to Jacksonville, and the agreement of compromise, are not maritime contracts"); <u>Laredo Offshore Constructors, Inc. v. Hunt Oil Co.</u>, 654 F.2d 1223, 1231-32 (5th Cir. 1985) ("It is fundamental that the mere inclusion of maritime obligations in a mixed contract does not, without more, bring non-maritime obligations within the pale of admiralty law"); <u>Luckenbach S.S. Co. v. Gano Moore Co.</u>, 298 Fed. 343, 344,

(2d Cir. 1923) (L. Hand, J.), <u>rev'd in part on other grounds</u>, 298 Fed. 344 (2d Cir. 1924). ("Nor is it possible to treat a contract of sale as maritime even though its performance involves the carriage of goods on the seas to the place of delivery. . . . In such matters, the whole contract must be maritime in its character, and, when the performance is partly maritime and partly terrene, a court of admiralty will not assume jurisdiction over it, unless the nonmaritime features be inconsiderable.")

958 F.2d at 59. <u>See also</u> <u>French Republic v. Fahey</u>, 278 F. 947, 948 (D. Md. 1922) ("The circumstance that the buyer wanted the grain transported by water did not alter the essential nature of the agreement.")

The undisputed principal purpose of the Sales Contract was the sale and purchase of barley. The Sales Contract is not a maritime contract within the meaning of Rule B or under either U.S. general maritime law or applicable English substantive law.

## POINT IV

## <u>THE SEVERABILITY EXCEPTION IS INAPPLICABLE</u>

Even if, which is denied, the GAFTA Claims are <u>not</u> "sufficiently attenuated from maritime commerce" so as to implicate concerns lying within admiralty jurisdiction <u>as a matter of U.S. law</u> that is the first inquiry, not the last. As discussed below, the next step across the threshold is a determination whether Kulberg can claim maritime jurisdiction under the severability exception for either or both of the GAFTA claims, which it cannot in respect of either claim under either U.S. or English law.

An exception to the rule that "mixed" contracts do not give rise to admiralty jurisdiction is, as stated in <u>Folksamerica</u>, 413 F.3d at 314, where "the claim arises from a breach of <u>maritime obligations</u> that are severable from the non-maritime obligations of

-14-

the contract" (citing Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000)).  As the Jardine-Brown Declaration avers, neither the main claim for market loss nor the "demurrage" claim are cognizable maritime or admiralty claims under applicable English law.  (Id. ¶13.)

The issue of whether the various breaches and claims arising therefrom of a sales contract would support a Rule B attachment has been recently addressed by a number of Judges sitting within the Southern District of New York.

(1)    In Exim Grain Trade, supra, Exim attached in excess of $1 million in respect of disputes under a contract for the sale of Russian milling wheat, based on the GAFTA 48 form.  Exim claimed that JKI has failed to nominate an appropriate ship to carry the agreed tonnage of wheat and claimed as its damages the lost sales price and carrying charges.  In examining the principal objective of the contract Judge Pauley concluded that "the Wheat Contract is for the sale of goods" and that "[w]hile it provides for the wheat to be delivered to a maritime vessel, that alone is insufficient to show that the contract's primary purpose was maritime commerce [citing Lucky-Goldstar]."

(2)    In EFKO Food Ingredients Ltd. v. Pacific Inter-Link SDN BHD, 582 F. Supp. 2d 466 (S.D.N.Y. 2008), the plaintiff alleged the Court's admiralty jurisdiction over contracts the subject matter of which was the sale and purchase for a quantity of palm olein.  The Court held that the contracts were not maritime because "neither palm olein nor the sale thereof is directly or intimately related to the operation of a vessel or its navigation."  The plaintiff was not seeking damages "for anything related to the shipping of the products; it is seeking damages for failure to transfer title to the palm olein."

-15-

(3)    In <u>Aston Agro-Industrial AG v. Star Grain Ltd.</u>, No. 06 CV 2805, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006), the Court considered two contracts for the sale of Russian wheat that "specified that delivery would be made by ship" and that provided "clauses relating to the conditions under which the shipment and unloading of the wheat should occur." Aston, as seller entered into separate charter parties for two vessels to carry and deliver the wheat to Star Grain in Egypt. The wheat was damaged and Star Grain demanded cash payment for the damage. The vessels were delayed for two months until the ship owners paid Star Grain. Star Grain refused to pay Aston for the "demurrage" for the vessels' delay. In the ensuing GAFTA arbitration the tribunal found Star Grain liable for demurrage under the sales contracts. Aston filed its Rule B action to satisfy the GAFTA award. Judge Daniels held:

> In this case, the contracts are not maritime contracts because their primary objective was not the transportation of goods by sea. Instead, <u>their primary objective was, undoubtably (sic.), the sale of wheat.</u> That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipping via airplane.

<u>Id</u>. at *9-10 (emphasis added).

Judge Daniels continued in respect of the exception, claimed by Aston:

> Here, invoking the first exception, Aston contends that maritime jurisdiction exists because the particular claims at issue involve only the maritime portions of the contracts. The contracts create no maritime obligations on Star Grain, however, let alone any maritime obligations that are severable from the non-maritime obligations. Rather, Star Grain's only obligations under the contracts were to pay the agreed-upon price pursuant to the stipulated payment terms, and to begin discharging the wheat when the ships arrived in port even if

> the ships arrived before the bills of lading were received.
> There is nothing uniquely maritime about these obligations
> necessitating "a neutral federal forum and uniform body of
> law to adjudicate rights and liabilities as they relate[] to the
> trafficking of sea-faring vessels.". . . .  Rather, all that was
> required in adjudicating the underlying claims here was the
> straight-forward interpretation of contracts for the sale of
> goods.

Id. at *13 [citations omitted].

(4)    In a decision also interpreting a similar contract, Judge Lynch found no

maritime jurisdiction over a claim for the non-delivery of iron ore shipped from India to

China in Shanghai Sinom Import & Export v. Exfin (India), No. 06 Civ. 4711, 2006 U.S.

Dist. LEXIS 97863 (S.D.N.Y. Oct. 6, 2006)(transcript reported at 2006 AMC 2950):

> On this record, both common sense and long-established case
> law suggest that this is a nonmaritime dispute between a
> purchaser and seller over the alleged failure to deliver
> purchased goods.  I note that the dispute has no connection to
> the United States whatsoever, and there is apparently no basis
> for in personam jurisdiction over the defendant in this court
> or for subject matter jurisdiction in the federal courts on any
> nonadmiralty basis.
>
> *      *      *
>
> What we have here is a contract of the sort perfectly familiar
> long before the advent of container ships and integrated
> transportation systems. The purchase of goods by a buyer in
> one country from a seller in another, with a proviso that the
> goods are to be sent by sea, and with some incidental
> provisions bearing on the nature of that shipment, the alleged
> breach here was a breach wholly of the sale of goods
> provisions of the contract, not of its incidental maritime
> aspects, or indeed, of any transportation aspect at all. There is
> thus no basis in this case for maritime jurisdiction.

Id. at 2006 AMC 2951 – 52 [emphasis added].

(5)     Judge Crotty also vacated an order of attachment on the basis that the underlying sales contract did not give rise to a maritime claim.  Tangshan Shiajichenhui Iron & Steel v. Lords Polymer P VT Ltd., et al., No. 08-Civ-3576 (S.D.N.Y. May 20, 2008)(Docket Entry No. 15)(Appendix A hereto).

(6)     In Kulberg Finances Inc. v. Ipek Yem Ve Gida Sanayi Ticaret A.S., No. 08-cv-10592 (S.D.N.Y. Apr. 22, 2009)(Docket Entry No. 19), Judge Kaplan vacated an attachment after defendants argued that an agreement for the purchase and sale of Ukrainian origin wheat bran pellets was not a maritime obligation and thus did not support a Rule B attachment.

(7)     In Noble Resources v. Yugtranzitservis et al., No. 08 Civ. 3876, Judge Preska's ruling at oral argument on July 23, 2008 (Appendix B hereto) involved a similar challenge to admiralty jurisdiction in respect of a Rule B complaint.  The underlying contract was for the sale and purchase of 25,000 metric tons of Russian milling wheat and a guarantee agreement in respect of that sales contract.  As alleged by Noble (in its brief dated July 22, 2008, page 5):

> More importantly, the breaches that are alleged by Noble in its Rule B application, relate specifically to the maritime portions of the contract.  Noble is seeking security for losses suffered as a result of YTS's failure to load the Vessel after its nomination was approved.  Additional damages were sought for wasted vessel expense including bunkering costs, port and survey costs and hire payments.

Judge Preska, in finding that the sales contract was maritime giving rise to the Court's admiralty jurisdiction, held:

Here, the contract itself makes clear that maritime transportation was integral to the agreement. For example, the contract provided that Plaintiff Noble would purchase a cargo from YTS and the contract set out in great detail the conditions for transportation and delivery.

\* \* \*

In addition, the dispute between the parties also touches upon the maritime commerce. As set out in plaintiff's claim submissions in the arbitration, and perhaps more importantly as reflected in the award, the dispute centered on two issues. First, the default by YTS in failing to provide a berth for the vessel after she had tendered her notice of readiness and refusal to load the vessel constituting a default under the contract. And, secondly, a request for wasted vessel costs, that is, the costs incurred by the vessel following tendering of her notice of readiness.

\* \* \*

For all those reasons, I find that the contract and dispute at issue fall within the Court's maritime jurisdiction.

(Appendix B, p. 2-4.)

Noble is contrary to a body of authority, and at least six other decisions from this Court on the same issue. It is distinguishable on its facts. The decision is also directly contrary to Judge Daniel's ruling on a similar sales contract in Aston where the claim was for vessel demurrage. Maritime transport is not "integral" to a contract for sale of wheat.

Just like the foregoing contracts, there is nothing maritime about the claims asserted by the Plaintiff in the GAFTA arbitration. The claims are nothing more than for damages arising from an alleged breach of a non-maritime contract to purchase barley.

## <u>CONCLUSION</u>

Defendant respectfully requests that the Court order that the PMAG be vacated and the Complaint dismissed for lack of admiralty jurisdiction, that it be awarded all fees and costs of this motion, and for such other relief as is fair and equitable and as requested herein.

Date:     New York, New York
          May 28, 2009

                                        Respectfully submitted,
                                        BLANK ROME LLP

                              By:    /s/ *Jeremy J. O. Harwood*
                                     _____
                                     Jeremy J.O. Harwood
                                     Attorneys for Defendants
                                     405 Lexington Avenue
                                     New York, New York 10174
                                     (212) 885-5000

Of Counsel:
          Alan M. Weigel

-20-

131643.00602/6723003v.1

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

TANGSHAN SHIAJICHENHUI IRON AND
STEEL PRODUCTS CO. LTD.,

                                    *Plaintiff,*

      - against -

LORDS POLYMER (I) PVT. LTD.; BLUE FLEET
MANAGEMENT COMPANY LTD.; BLUE FLEET
CHARTERING S.A.; and BELINDA BLUE
OCEAN INC.,

                                    *Defendants,*

-------------------------------------------------------------- X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 2 8 2008

08 Civ. 3576 (PAC)

**ORDER and JUDGMENT**

**WHEREAS,** defendant Lords Polymer (I) Pvt., Ltd., brought     by Order to Show Cause

dated May 13, 2008, a motion seeking an order vacating the process of maritime attachment and

garnishment (hereinafter "PMAG") against it, in favor of plaintiff Tangshan Shiajichenhui Iron

and Steel Products Co., Ltd.; and

**WHEREAS,** the parties had an opportunity to fully brief the issues raised in the motion;

and

**WHEREAS,** the Court heard oral argument of the motion on May 19, 2008; and

**WHEREAS,** following oral argument and after consideration of the papers filed in

relation to the motion and upon all prior pleadings filed in the matter, the Court ruled that the

dispute between plaintiff Tangshan Shiajichenhui Iron and Steel Products Co., Ltd., and

defendant Lords Polymer (I) Pvt., Ltd., was not cognizable under the Court's admiralty and

maritime jurisdiction.

**NOW, THEREFORE,** it is hereby:

**ORDERED** that the PMAG issued pursuant to the Court's Order dated April 15, 2008, is vacated as to defendant Lords Polymer (I) Pvt., Ltd.; and it is further

**ORDERED** that any and all goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, wire transfers, accounts, electronic fund transfers, freights, subfreights, charter hire, sub-charter hire, or any other tangible or intangible property being held or restrained by or on account of the PMAG are to be released forthwith and wired in accordance with their original instructions or in accordance with instructions received from Lords Polymer (I) Pvt., Ltd., as conveyed by its counsel; and it is further

**ORDERED** that this matter be discontinued with prejudice and without costs as to Lords Polymer (I) Pvt., Ltd.; and it is further

**ORDERED** that this Order shall have no effect upon any other defendant not specifically named in this Order and Judgment.

Dated: New York, New York
    May 20 , 2008

SO ORDERED:

_____
**U.S.D.J.**                    **Date**

# APPENDIX B

131643.00602/6723003v.1

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)

1

87N6NOBL
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    NOBLE RESOURCES,
3
4              Plaintiff,
4
5         v.                      08 CV 3876(LAP)
5
6    YUGTRANZITSERVIS and
6    SILVERSTONE,
7
7              Defendants.
8
8    ------------------------------x
9                              New York, N.Y.
9                              July 23, 2008
10                             9:45 a.m.
10
11   Before:
11
12             HON. LORETTA A. PRESKA,
12
13                   District Judge
13
14             APPEARANCES
14
15   TISDALE LAW OFFICES, LLC
15       Attorneys for Plaintiff
16   BY:  CLAURISSE OROZCO
16
17   CHALOS & CO.
17       Attorneys for Defendants
18   BY:  GEORGE M. CHALOS
18
19
20
21
22
23
24
25

             SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

2

♀
87N6NOBL
1        (Case called; in open court)
2
3        THE COURT:  Counsel have very graciously agreed to
4    prepare their papers quickly so that the hearing required to be
5    conducted quickly on a motion to vacate a maritime attachment
6    could take place promptly.  I am grateful to counsel for doing
7    that.

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)

8    Defendant argues first that the contract at issue is
9    not subject to maritime jurisdiction.  We all agree to the law
10   which is that the threshold inquiry examines the subject matter
11   of dispute as opposed to the underlying contract.  To determine
12   if an issue related to maritime interests has been raised, an
13   issue will not give rise to maritime jurisdiction if the
14   subject matter of the dispute is so attenuated from the
15   business of maritime commerce that it does not implicate the
16   concerns underlying admiralty and maritime jurisdiction.
17       As the Court of Appeals acknowledged in FolksAmerica,
18   Reinsurance Co. v. Cleanwater New York, Inc., 413 F.3d 307 (2d
19   Cir. 2005) the court directed that the jurisdictional inquiry
20   be focused upon whether the nature of the transaction was
21   maritime and observed that the fundamental interest giving rise
22   to maritime jurisdiction is the protection of maritime
23   commerce.
24       Here, the contract itself makes clear that maritime
25   transportation was integral to the agreement.  For example, the

⚲

87N6NOBL

1    contract provided that Plaintiff Noble would purchase a cargo
2    from YTS and the contract set out in great detail the
3    conditions for transportation and delivery.
4        The contract set out in the portion under delivery the
5    window of dates open for loading in the specified port, that
6    portion of the contract also required that the vessel nominated
7    by buyers was required to tender her notice of readiness at the
8    designated port.  It set out how the loading of the vessel was
9    to be effected.  It set out in great detail the type of vessel
10   that would be acceptable, that is, "A self-trimming bulk
11   carrier, single-decker vessel suitable for direct loading
12   (wagon-board of the vessel)."
13       The Contract also provided that the vessel could be --
14   should be confirmed or rejected by sellers in writing and, in
15   fact, here the sellers rejected the first three vessels that
16   were nominated eventually accepting the Southgate.
17       The contract further set out the preadvise that buyers
18   were to give the sellers of the vessel's ETA, name, flag,
19   dimensions, hatches and hold dimensions and alike.  It set out
20   in detail the loading instructions, the loading rate, detailed
21   the notice of readiness and the laytime and the demurrage,
22   among other provisions.  So the underlying contract certainly
23   touched upon the business of maritime commerce.
24       In addition, the dispute between the parties also
25   touches upon the maritime commerce.  As set out in plaintiff's

⚲

87N6NOBL

1    claim submissions in the arbitration, and perhaps more
2    importantly as reflected in the award, the dispute centered on
3    two issues.  First, the default by YTS in failing to provide a
4    berth for the vessel after she had tendered her notice of
5    readiness and refusal to load the vessel constituting a default

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)

6  under the contract. And, secondly, a request for wasted vessel
7  costs, that is, the costs incurred by the vessel following
8  tendering of her notice of readiness.
9      As set out in the award damages were awarded for both
10  these items and indeed there was a lengthy discussion in
11  Section 6 of the award about the wasted costs incurred on
12  account of the vessel's lack of use because of defendant YTS's
13  default. The wasted vessel expenses included bunkering costs,
14  port and survey costs, and hire payments, all clearly within
15  the maritime jurisdiction.
16      For all those reasons, I find that the contract and
17  dispute at issue fall within the Court's maritime jurisdiction.
18      The question has also been presented as to whether or
19  not the guarantee by Silverstone falls within the Court's
20  maritime jurisdiction. As the Court has set out recently in C
21  Transport Panamax, Ltd. v. Kremikovtzi Trade, et al., 07 CR 893
22  (June 19, 2008 S.D.N.Y.) courts in this circuit and elsewhere
23  have long held that an agreement to act as a surety on a
24  maritime contract is not maritime in nature. They have
25  recognized that the same is not true of an agreement to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

87N6NOBL
1  guarantee the performance of a maritime contract.
2      See e.g. Compagnie Francaise, DE Navigational Avapeur
3  v. Bonnase, 19 F.2d 777, 779 (2d Cir. 1927) (L. Hand, J).
4      Here the guarantee by Silverstone specifically states
5  "The guarantor (Silverstone) irrevocably and unconditionally,
6  A, as principal obligor guarantees to the Buyers the prompt
7  performance by (YTS) of all its obligations under the
8  Contract...." Accordingly, the guarantee at issue here based
9  on longstanding Second Circuit law falls within the meaning of
10  maritime contracts.
11      Finally, with respect to defendant's argument that the
12  matter is not ripe, the arbitral award has ordered that the
13  payment be made and it has not yet been paid. Accordingly, the
14  matter is ripe with respect to the guarantor. In addition, it
15  is most frequently the case that Rule B attachments are used to
16  provide security for arbitral awards and that has been the use
17  here. Accordingly, defendants' motion to vacate the attachment
18  is denied.
19      THE COURT: Is there anything else today?
20      MR. CHALOS: Yes, your Honor, two points if I may.
21      THE COURT: Sir.
22      MR. CHALOS: We thank the Court for hearing us on an
23  expedited basis. We would first off like to make an
24  application to the Court to reduce the amount of security. On
25  page 14 of the award, the panel clearly sets forth that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

87N6NOBL
1  plaintiff was awarded $3,362,400 and no more as the words of
2  the panel. Here the amount of the order attachment is almost
3  double that. It is significantly more.

Page 3

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)

4      THE COURT:  What is the story with the interest,
5    Mr. Chalos?
6          MR. CHALOS:  According to the panel, it is 7.5 percent
7    beginning August 16, 2007.  That is only one year's worth of
8    interest.  Surely this can be resolved in the next, I would
9    assume, six months or so with the upcoming appellate deadlines.
10         THE COURT:  Has anyone done the calculation of the
11   interest?
12         MS. OROZCO:  I have, your Honor.  But I would just
13   like to speak on that point.  The panel awards the amount less
14   than we had sought in our application, but it also awards
15   interest 7.5 percent from the date of the default until it is
16   paid and it also awards costs of arbitrator, not legal costs.
17         We have attached to date as outlined in my declaration
18   $4 million.  It is paragraph 34 of my declaration at page 6.
19   We have not calculated the interest out for a year.  What we
20   have done is calculated it out for three years, which is
21   normally what we undertake in anticipating appeals and that
22   sort of thing.  If we allow for three years of interest,
23   security for three years of interest, plus the costs of the
24   Gafta arbitration, the security that we would be entitled to
25   would be $4,225,000.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

87N6NOBL

1          So we are at this time undersecured by 200,000.
2    However, if the Court wants us to reevaluate the interest, we
3    would be willing to do so and then release the funds
4    accordingly if that was a proper analysis.
5          THE COURT:  Counsel.
6          MR. CHALOS:  Those calculations are flawed.  Those
7    calculations are based on the principal claim of 3.9 million.
8    That is not what the panel awarded.  7.5 percent on the $3.3
9    million award is about, 21 to $210,000.
10         MS. OROZCO:  I actually calculated the three-year
11   interest on the amount awarded by the arbitrators, which was
12   $3,362,400.  And the interest from August 15th, 2007 through
13   August 15th, 2010 is $840,000.
14         MR. CHALOS:  I submit through 2010 is a bit long.  I
15   can certainly understand maybe two years, but not three.
16         Also, seeing as they are already secured from the
17   guarantor's EFTs, I renew my application and dismiss the matter
18   against YTS.  They are secured or they are not secured.  They
19   have it already attached.  There is no in rem quasi
20   jurisdiction over the party whose funds who haven't been
21   attached.
22         THE COURT:  I don't hear counsel going out and seeking
23   further attachments here.
24         MR. CHALOS:  But they would, though.  That is the
25   point if they sought to move money.  In fact, in the papers

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

87N6NOBL

1    that counsel submitted last night, they said exactly that they

Page 4

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)

2  would do that.  If they wound up -- U.S. dollar transfers on
3  behalf of Yugtranszitservis came through New York, they would
4  catch that and release monies belonging to the guarantor.
5      THE COURT:  What do you say to that, counsel?
6      MS. OROZCO:  Was that was a statement that we made.
7  That statement as made with respect to the application of the
8  New York CPLR in that case, which we didn't address and we say
9  we are not applied.  We actually have stopped serving the writ
10  of attachment in this case and we are no longing serving on any
11  of the defendants.
12      THE COURT:  First, I decline to reduce the amount.
13      Second, obviously counsel knows that plaintiff may not
14  be oversecured.  If, Mr. Chalos, you find that plaintiff is
15  attaching more than the four million two number -- is that the
16  total number?  Please remind me.
17      MS. OROZCO:  Yes.  The total number is comprised of
18  $3,362,400 of principal pursuant to the arbitration award
19  issued on July 4th, 2008, with the rate of interest calculated
20  at 7.5 percent which is also the rate awarded for three years
21  from August 15th, 2007 through August 15th, 2010.  The interest
22  on that amount is $840,501.
23      In addition, the arbitration award also allowed costs,
24  Gafta costs, to the plaintiff and the Gafta costs incurred were
25  23,000 U.S. dollars.  So the total security we would be

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

87N6NOBL

1  entitled to or we would be seeking is $4,225,901.
2      THE COURT:  To the extent, Mr. Chalos, counsel
3  attaches more than that, you let me know.
4      MR. CHALOS:  Thank you, your Honor.
5      Finally, your Honor, we would like to ask the Court to
6  certify this for immediate appeal to the Second Circuit.
7      THE COURT:  I will take a letter on that.
8      How is this a complex or novel issue?
9      MR. CHALOS:  Well, it is a novel issue in the sense
10  that the Court has for the first time found a Gafta contract to
11  be within the meaning of a maritime contract and a maritime
12  claim under Rule B.  It stands starkly in contrast to Judge
13  Daniels' decision as to Aston Agro as well as Judge Sullivan, I
14  am not sure about that, in the Tan Shan case.  These exact
15  arguments were presented there with a 180-degree different
16  result and I do believe that if we can bring this to a head
17  Second Circuit level promptly that would help provide some
18  clarity on these types of issues.
19      THE COURT:  The law is not in doubt.  It is the
20  application, right?
21      MR. CHALOS:  Well, I think the law is in doubt in a
22  sense that our position is that the Court needs to look to the
23  primarily objective of the contract.  Our argument has been
24  that the primary objective of the contract is one of sale and
25  purchase.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)
87N6NOBL

1          THE COURT:  I didn't see any of the Second Circuit
2    cases talking about the primary objective of the contract.
3          MR. CHALOS:  Well, I think we set out the argument
4    based on the precedent of Judge Daniels' decision, which can be
5    found for the Court's reference on page 3 of the Aston Agro
6    decision where he writes, In this case the contracts are not
7    maritime contracts because they are primary objective was not
8    the transportation of goods by sea.  Instead, their primary
9    objective was undoubtedly the sale of wheat.  That the wheat
10   was transported on a ship does not make the contracts maritime
11   contracts anymore than it would make them aviation contracts
12   had the wheat been shipped via airplane.  Nor would the
13   contracts between a seller and shipper -- that is true here.
14   the judge in that matter goes on to write, Nor can maritime
15   jurisdiction be exercised under an exception to the general
16   rule that maritime jurisdiction "Arises only when the subject
17   matter of the contract is purely or wholly maritime in nature.
18   Under the first exception, federal court can exercise --
19         THE COURT:  Counsel, do you want this taken down?  If
20   you do, you better read so the court reporter can take it down.
21         MR. CHALOS:  The Court has it before it.
22         THE COURT:  So you don't need to read it.
23         MS. OROZCO:  May I respond?
24         THE COURT:  Yes, ma'am.
25         MS. OROZCO:  The key to the quotes by defendant from

♀

11

87N6NOBL

1    the Ashon Agro case is the first line where it says, "In this
2    case." and further or in the quote Judge Daniels says that
3    based on the facts of that particular case they are not within
4    the maritime jurisdiction.
5          I would just like to point out that the Exxon case,
6    500 U.S. 603, 612 reminds us -- this is the U.S. Supreme
7    Court -- reminds us that courts are required to look to the
8    subject matter of the relevant contract.  And in this case the
9    relevant contract, the Noble YTS contract, provides maritime
10   jurisdiction.
11         MR. CHALOS:  Your Honor, this is the shifting sands
12   that I have been arguing again.  The Court is required to look
13   to the nature of the contract, not the dispute.  Twenty minutes
14   ago counsel was arguing the Court needs to look to the dispute
15   and I rejected that.  The contract is a sale and purchase
16   contract, not a maritime contract.  It is not maritime contract
17   with third parties.  We had nothing do with it.  My clients had
18   nothing to do with it.  That is the dispute here. If you look
19   to the nature and substance of the contract, we are selling and
20   they are buying.  Full stop.  It is the sale and purchase
21   contract.
22         In fact, your Honor, that was precisely what was
23   addressed by Judge Daniels.  He writes here invoking the first
24   exception, Aston contends that maritime jurisdiction exists
25   because the particular claims at issue involve only the

Noble v Yugtranzitservis (7 23 08)(GAFTA Contract within Admiralty Jurisdiction)
(212) 805-0300

12

87N6NOBL

1   maritime portions of the contracts, and it was rejected, which
2   is precisely the argument presented by plaintiff.  Our
3   opposition is precisely the argument adopted by Judge Daniels.
4          THE COURT:  The Court denies the request for
5   certification under 28, U.S.C., Section 1292(b).  The
6   controlling law is not at all at issue in this case.  Everyone
7   agrees on the cases that should be looked to for guidance.  The
8   only dispute is the application of those cases to the facts of
9   this case as opposed to the facts of other cases.  Accordingly
10   certification for immediate appeal is denied.
11          Anything else, counsel?
12          MR. CHALOS:  Nothing further, your Honor.
13          THE COURT:  Thank you, ladies and gentlemen.  Thank
14   you for your excellent arguments.
15                    o0o
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300